## ESTES *v.* CALLAHAN.

Although, the intervenor in the present case might, in an equitable peti-
tion in aid of the levy of his fi. fa., have asked for the appointment of
a receiver in a new and different proceeding, it was beyond the power
of the court and without its jurisdiction to appoint a receiver in an
entirely different cause of which the court had lost jurisdiction by
reason of the fact that another judge of the same court had previously
certified a bill of exceptions which was then pending in the Court of
Appeals.

No. 5783. SEPTEMBER 13, 1927.

Receivership. Before Judge E. D. Thomas. Fulton superior
court. August 13, 1926.

*W. A. James* and *L. S. James,* for plaintiff in error.

*Alvin L. Richards,* contra.

RUSSELL, C. J. As appears from the record, Callahan owned a
house and lot in the City of Atlanta, on which he obtained a loan
of $2000 from the City Savings Bank. He sold this house to one
Abercrombie, subject to this loan, and Abercrombie in turn sold

---

Appeal and Error, 3 C. J. p. 1255, n. 43; p. 1270, n. 39 New.

it to Mrs. Estes, the plaintiff in error, subject to the loan in favor of the City Savings Bank as well as the purchase-money notes given by Abercrombie to Callahan, amounting to $1300. The City Savings Bank sued Callahan on the loan, and obtained judgment. Callahan sued Abercrombie for the balance on his purchase-money notes, and obtained judgment. The fi. fa. in favor of the City Savings Bank was levied upon the house then in the possession of Mrs. Estes, and she interposed a claim. Upon the trial of the claim case the property was found subject to the fi. fa. in favor of the City Savings Bank, and by bill of exceptions the case was presented to the Supreme Court. *Estes* v. *City Savings Bank*, 164 *Ga.* 573 (139 S. E. 13). In the process of the litigation just referred to, an application by the City Savings Bank for the appointment of a receiver to take charge of and collect the rents from the house which had been purchased by the claimant was refused. The property was advertised to be sold on the first Tuesday in January, 1926, and the claim of Mrs. Estes was filed the day preceding that fixed for the sale. After the writ of error in the preceding case had been certified by the presiding judge, Hon. John D. Humphries, on July 3, 1923, and on August 13, 1926, as appears from the bill of exceptions in this case, as certified by Hon. E. D. Thomas, the same cause was taken up for trial upon an intervention filed by Callahan, in which he alleged that he was the owner of a judgment against Abercrombie, based upon an indebtedness payment of which had been assumed by Mrs. Estes, and setting up that Mrs. Estes was in possession of the property without paying any rent; that the property was subject to the debt of the City Savings Bank, and would probably bring enough at the sale to pay the indebtedness due the bank; but asking that a receiver be appointed to take possession of the house and collect and hold the rents until the conclusion of the litigation, for his protection. The lower court passed an order that a receiver be appointed in case the defendant did not give bond for the eventual condemnation-money, and exception is taken to this judgment.

We are of the opinion that the court erred in the appointment of a receiver. Regardless of the fact that the judge did not pass upon the demurrer interposed to the petition when the same was read, but proceeded, on the contrary, to require the introduction of evidence as to the facts stated in the petition for a receiver, the

objections of the plaintiff in error to the hearing, based upon the ground that the case was pending in the Supreme Court, should have been sustained. The case pending before the court (even after the order consolidating case No. 66800 and case No. 66843) was nothing but an ordinary claim case in which the parties were the City Savings Bank as plaintiff in fi. fa. and Mrs. Texas L. Estes as claimant, and the petition for receiver, which is entitled in the record as City Savings Bank v. Mrs. T. L. Estes. Callahan was not a material party in either case, for the reason that the sole issue in a claim case is whether the property levied upon is the property of the claimant or is subject to the fi. fa. of the plaintiff in fi. fa. as the property of the defendant in fi. fa. One of the points made in the demurrer of the plaintiff in error in this case, setting forth that the petition filed by the defendant in fi. fa. set forth no cause of action, is based upon this principle; and we think the ground of demurrer was well taken. The answer of the defendant in fi. fa., Callahan, admitted his liability to the judgment upon which the levy was proceeding. In our opinion the entire petition was irrelevant to the issue in the claim case, and afforded no reason for the appointment of a receiver.

But should we be mistaken as to this, the court should not have entertained or passed upon the intervention or have appointed a receiver on August 13, 1926, after the consolidated cases had been transmitted to this court for adjudication on the bill of exceptions certified by Hon. John D. Humphries on July 3. Courts of review have never been inclined to favor the practice of trying cases by piecemeal and in dissevered fragments, and for that reason it has been uniformly held that when "the bill of exceptions is certified by the trial judge, the case is no longer pending in his court, and he is wholly without authority to pass any order or do any act with reference to the same." *Georgia etc. R. Co.* v. *Lasseter,* 122 *Ga.* 679, 684 (51 S. E. 15). "As a general rule, when an appeal or writ of error is perfected the case becomes one for the cognizance of the appellate court, and for that court alone; the authority of the lower court is terminated, and it can not proceed in the cause, at least as to the subject-matter of the appeal or writ, until the appeal or writ of error is heard and determined." 3 C. J. 1255, § 1369; Michigan Ins. Bank *v.* Eldred, 143 U. S. 293 (12 Sup. Ct. 450, 36 L. ed. 162). The trial of the applica-

tion for a receiver was particularly inappropriate in the present case, because it was an attempt to engraft rights of Callahan upon a proceeding which concerned only the City Savings Bank, and to use the levy of the fi. fa. in favor of the City Savings Bank, when it does not appear from the record, and certainly not in the petition of Callahan, that there has ever been any levy of the fi. fa. obtained by Callahan against Abercrombie.

*Judgment reversed. All the Justices concur, except Gilbert and Hines, JJ., who dissent.*

HINES, J. I dissent from the ruling of the majority that the court below erred in appointing a receiver for the premises in dispute, at the instance of Callahan, upon the ground that the court had lost jurisdiction of the case by reason of the fact that a bill of exceptions had been sued out and was pending in the Court of Appeals at the time the receiver was appointed. An execution in favor of the City Savings Bank against Callahan was levied upon certain realty as the property of the defendant in execution, and to this property Mrs. Estes filed a claim. Subsequently the City Savings Bank filed an equitable petition against Callahan and Mrs. Estes, in which it alleged that Callahan had borrowed from it the sum of $2000, and had given to petitioner a deed to the land levied upon, to secure said loan; that Callahan had conveyed said property to Abercrombie, who assumed, as a part of its purchase-money, the debt due by Callahan to petitioner; that Abercrombie executed to Callahan, subject to the deed of petitioner, a deed to these premises, to secure the balance of the purchase-money which he was to pay Callahan for these premises, amounting to $1300; that Abercrombie conveyed this property to Mrs. Estes by deed in which it was recited that it was made subject to the deeds of petitioner and of Callahan to these premises; that Mrs. Estes had filed a claim to this property; that she was not paying the notes which she had executed to Callahan for the purchase of this property; that she was living on the premises without paying anything whatsoever; that her claim was filed in forma pauperis; that she had demolished certain portions of the house on the land levied upon; and that the house was easily worth $35 per month for rent. Petitioner prayed for a receiver. Mrs. Estes demurred to this petition, upon various grounds, which demurrer does not appear to have been passed upon by the court:

and subject to her demurrer she filed an answer in the nature of a cross-petition, in which she alleged that she had paid to Callahan $600 of the purchase-money of this property, and to Abercrombie $1400 in a farm; that it was the duty of Callahan to pay his debt to petitioner, as he had made the loan deed to it, and thereby protect her, as he had sold the property to Abercrombie, from whom she had purchased the same; that petitioner and Callahan had conspired together to sell these premises so as to defraud her out of the money which she had paid on the premises; that Callahan defaulted in the payment of the interest coupons due on his indebtedness to petitioner, to permit the whole debt to be declared due and suit to be brought against him, for the above purpose; that Callahan had other property than the premises in dispute, out of which petitioner could make its money, and against which she can not proceed, as she has no judgment against Callahan; and that if the premises are sold on account of Callahan's default and his debt, she will lose all the money she has paid thereon. She prayed that Callahan and Abercrombie be made parties to the petition, that they set up their claims and equities in the premises, and that she have judgment against these premises for the amount of $2000 which she had paid thereon.

This petition was returnable to the March term, 1926, of Fulton superior court. Mrs. Estes moved the court to consolidate the above claim and equitable petition; and on April 1, 1926, an order was passed consolidating the two cases, making Callahan and Abercrombie parties thereto, requiring that they be served at once, and requiring the plaintiff to show cause on the trial why the prayers of the cross-petition of Mrs. Estes should not be granted, and that all parties set up their equities in the consolidated cases. Abercrombie and Callahan were served on April 12, 1926, with copies of the above proceedings. This made the May term, 1926, of the court, which began on May 3, 1926, the appearance term of the consolidated cause, as to Callahan and Abercrombie. They were entitled to the same time within which to prepare for trial as if they had been original parties to the cause, unless they had consented to the trial at the first term. Civil Code (1910), § 5602. The consolidated cause was called for trial on the first day of the May term, 1926. At that time Callahan and Abercrombie had not appeared or pleaded, and did not consent for the case to be

tried at that time. The claimant moved to continue the case, on the ground that it was not ripe for trial. Her motion to continue was overruled, and the case proceeded to trial. After the introduction of evidence, the jury, on May 3, 1926, by direction of the court, returned a verdict finding the property subject to the levy, and on the same day a judgment was entered adjudging the property subject to the levy, and ordering the fi. fa. to proceed. The claimant moved for a new trial upon various grounds, which motion was overruled. To that judgment she excepted, and on July 3, 1926, she sued out her bill of exceptions, which was made returnable to the Court of Appeals, but which was subsequently transferred to this court, as the Court of Appeals was without jurisdiction of the cause. The judgment of the lower court was affirmed by this court on July 18, 1927. *Estes* v. *City Savings Bank,* supra.

On July 22, 1926, Callahan filed his petition, in the nature of an answer, in the consolidated cause. He therein sets up his sale of the premises in dispute, on September 1, 1923, to Abercrombie, the consideration of the sale being the assumption by Abercrombie of his indebtedness to the City Savings Bank, secured by his deed, and the payment by Abercrombie to him of $1300, secured by Abercrombie's deed to him, subject to his deed to the bank, the sale of said property on the same day by Abercrombie to Mrs. Estes by warranty deed, the same reciting that it was made subject to the security deeds held by the City Savings Bank and by him, and Abercrombie's notes to him for the balance of said purchase-money, in the sum of $25 each, payable monthly; that for several months he rented the premises from Mrs. Estes, paying her $50 per month therefor; that from this rent sixteen of said notes were principally taken up, but that none of said notes had been paid since January 1, 1925, during which time Mrs. Estes has had possession and use of the premises; that she had failed to pay the judgment and fi. fa. in favor of the City Savings Bank against him; that he was liable to the City Savings Bank on its judgment against him for the above loan, which should have been paid by Mrs. Estes; that to compel him to pay off said judgment with Mrs. Estes in possession of the property would be a hardship on him, in violation of the intent of the parties when the property was sold to her; that he had sued on his notes against Abercrombie to judgment, and the same is a general lien upon the premises in dispute,

subject to the prior lien of the bank; that by reason of the filing of the claim by Mrs. Estes in forma pauperis, the verdict and judgment finding the property subject, the motion for new trial by the claimant, which had been overruled, the taking of the case by bill of exceptions to the Court of Appeals by Mrs. Estes upon pauper affidavit, and the order to supersede the judgment of the City Savings Bank, he has been caused to suffer, as said property probably might be sufficient to pay off the City Savings Bank, but it would not be sufficient to pay said bank and his debt; that said claim was filed for the purpose of delaying said foreclosure, and to permit the claimant, who was insolvent, to remain in possession of the property and receive the rents. He prayed that the court appoint a receiver to take charge of the property until said appeal is finally disposed of by the higher court. The court appointed a receiver. To this judgment Mrs. Estes excepted. In these circumstances, did the superior court err in appointing a receiver, upon the application of Callahan, upon the grounds, (a) that his petition for that purpose was irrelevant; and (b) that the court was without jurisdiction to appoint a receiver, because at the time of the appointment the case was pending in the Court of Appeals upon a bill of exceptions brought by the claimant to review the judgment of that court overruling her motion for new trial, in which she sought to set aside the verdict finding the premises in dispute subject?

1. I will deal with the first ground upon which the majority put their judgment reversing the judgment appointing a receiver, although there is no corresponding headnote embodying the principle therein announced, and although the court seems to put its judgment of reversal upon the lack of jurisdiction of the case by the court below at the time the appointment was made. In her answer to the petition brought by the City Savings Bank, in which it sought to have a receiver appointed for this property, the claimant, by way of cross-action, sought to have and succeeded in having Callahan and Abercrombie made parties thereto. She set up the facts hereinbefore recited, and prayed that all the claims and equities of the City Savings Bank, and of Callahan and Abercrombie, to the premises in dispute be fixed and determined by a decree of the court under her cross-action. Furthermore, upon her motion, the claim case and the equitable petition of the bank were

consolidated, for the purpose of having the rights and equities of the respective parties adjudicated. In view of these facts, it does not lie in the mouth of Mrs. Estes to assert that the bringing of Callahan into this case and his application for a receiver were wholly irrelevant. He was brought into the cause by her for the purpose of having his rights and equities settled. In his application for a receiver he asserted that he was entitled to the equitable relief of having a receiver appointed to take charge of these premises and of the rents arising therefrom, and to have the proceeds thereof applied, first, to the claim of the bank, and afterwards to his own judgment against Abercrombie. In this situation Mrs. Estes might assert that Callahan did not make a case entitling him to the appointment of a receiver for this purpose; but she could not set up that his application for a receiver was wholly irrelevant. Having brought him into the case, and having procured an order of the court requiring him to assert whatever rights and equities he had in and to the premises in dispute, she could not turn around and declare that his appearance in the case and his application for a receiver were entirely irrelevant. "In other words, courts of justice will not allow a party to blow hot and cold." *Neal Loan & Banking Co.* v. *Chastain,* 121 *Ga.* 500, 503 (49 S. E. 618); *Harris* v. *Harris,* 154 *Ga.* 271 (3) (114 S. E. 333); *Ellis* v. *Ellis,* 161 *Ga.* 360 (2) (130 S. E. 681). So this position of the majority in this matter seems untenable. Whether the application for receiver stated facts that would entitle the applicant to have a receiver appointed is another question, upon which the opinion of the majority is silent. I am of opinion that Callahan made a case for receiver.

2. Under the circumstances, was the superior court of Fulton County without jurisdiction to appoint a receiver, because the case was pending upon a bill of exceptions in the Court of Appeals? In view of numerous decisions of this court, this question should be answered in the negative. In *May* v. *Printup,* 59 *Ga.* 128, a suit was brought in the circuit court of the United States. An appeal was taken from the judgment of the circuit court to the Supreme Court of the United States. Thereafter the circuit court appointed a receiver to take possession of the property in dispute and preserve it until the termination of the case in the Supreme Court. The question arose whether the judgment of the circuit court, ap-

·pointing a receiver, was void for lack of jurisdiction. This court held: "The circuit court of the United States may pass orders to preserve property in litigation, where the proceeding is against the property, and its preservation is absolutely essential to give relief, by interlocutory orders, after and pending an appeal to the Supreme Court of the United States." In *Ryan* v. *Kingsbery,* 88 *Ga.* 361 (14 S. E. 596), this court held: "There being no order of supersedeas, the pendency of the writ of error in the Supreme Court is no obstacle to proceeding below with interlocutory matters in all respects as if no writ of error had been sued out." In the case at bar no supersedeas was granted, and the plaintiff in error brought her case to this court upon affidavit in forma pauperis, which did not supersede action in the equitable branch of the consolidated case, in the absence of an order granting a supersedeas. *Cummings* v. *Clegg,* 82 *Ga.* 763 (9 S. E. 1042). The effect of the affidavit in forma pauperis would only prevent the enforcement of ·the levy of the execution upon the property claimed during the pendency of the case in this court. In *Farmers Co-operative Mfg. Co.* v. *Drake,* 96 *Ga.* 766 (22 S. E. 1004), this court made this ruling: "The pendency in this court of a bill of exceptions assigning as error the granting of an order authorizing a receiver to sell certain property, there having been no supersedeas as required by law in cases of this kind, was no obstacle to the hearing and determination of a second application to sell, presented by the receiver to the judge." In *Armstrong* v. *American National Bank,* 144 *Ga.* 245 (86 S. E. 1087), this court ruled that "The trial court does not lose its jurisdiction of a cause pending a review of a judgment overruling demurrers to the petition; and it is competent for the judge after overruling the demurrer, and while that judgment is under review by a writ of error to the Supreme Court, to grant or refuse a temporary injunction." In *Barrett* v. *Maynard,* 150 *Ga.* 82 (102 S. E. 896), a landlord obtained a dispossessory warrant and a judgment ordering the tenant to pay a certain amount of rent or to vacate the premises, to which judgment the defendant excepted, and carried the case by writ of error to the Court of Appeals on pauper affidavit. Pending the case in the Court of Appeals, the plaintiff filed an equitable petition against the defendant, alleging that he was insolvent and refused either to vacate the premises or to pay the rent, and prayed for an injunction and re-

ceiver. This court held that it was not error for the court to appoint a receiver to take charge of the property, collect the rents and hold them subject to the future order of the court, and that the pendency of the dispossessory warrant case in the Court of Appeals on writ of error was not a bar to the action for the appointment of receiver as an aid to the relief sought in that case. In *Munford* v. *Peeples*, 152 *Ga.* 805 (111 S. E. 393), this court made this ruling: "The court below did not err in entertaining jurisdiction of an application for the interlocutory order sought, and in granting an interlocutory order which in its essence was preservative of the estate involved, and tended to safeguard the rights of the applicant which had otherwise been placed in jeopardy pending the appeal to the Supreme Court in a former case between the same parties and involving the same property." In *Sheridan* v. *Fowler*, 156 *Ga.* 238 (118 S. E. 853), this court made this decision: "Where a plaintiff in ejectment obtained a verdict and judgment for the premises in dispute, and the defendant, excepting to the refusal of a new trial, obtained supersedeas by making an affidavit in forma pauperis and brought up the case by writ of error, being insolvent and remaining in possession of the premises and in the enjoyment of the mesne profits, a petition by the plaintiff, invoking the equitable powers of the superior court to prevent loss, and praying that a receiver be appointed to take charge of the premises and hold the proceeds of rents subject to the order of the court and to the final determination of the ejectment case, was not subject to demurrer for want of equity and of jurisdiction to entertain such petition and to pass any order as to the subject-matter."

The authorities cited in the opinion of the majority do not sustain the conclusion reached by them. The decision in *Georgia etc. Ry. Co.* v. *Lasseter* (supra), states the general rule, which is that when an appeal or writ of error is perfected, the case becomes one for the cognizance of the appellate court alone, that the authority of the lower court is terminated, and that it can not proceed in the case *as to the subject-matter of the appeal or writ*, until the appeal or writ of error is heard and determined. The subject-matter involved in the instant case relates solely to the subject-matter of the claim, and not to the subject-matter involved in the equity case which has been consolidated with the claim. The error assigned in the former bill of exceptions in this case is

48

as to the judgment of the court below overruling the claimant's motion for new trial, in which she sought to have set aside the verdict finding the premises subject to the execution levied. That was the subject-matter of that writ of error. It did not involve any subject-matter involved in the equity case. The citation from Corpus Juris states the general rule. Corpus Juris lays down this principle: "Upon such a step becoming necessary for the preservation and conservation of the property pending the appeal, a receiver may be appointed upon proper application being made to the court below, . . according to the circumstances; or an existing receivership may be continued pending the appeal, or an order made changing receivers. And, generally, the pendency of an appeal in a receivership case does not prevent the court from taking such proceedings and making such incidental or collateral orders as may be necessary to preserve the assets or property and protect the rights of the parties.". 3 C. J. 1269, [§ 1386] 2. So it seems clear from the decisions of this court above cited, and from the authorities cited in the opinion of the majority, that the court could, in a proper case, appoint a receiver to preserve the property during the pendency of a case, in which that property was involved, in this court.

During the discussion of this case, while it was being considered in bank, the suggestion was made that a separate plenary suit in equity might be necessary in order for the applicant to obtain the appointment of a receiver. In some cases such a proceeding might be necessary; but under the facts of this case there was no necessity for the filing of an independent suit by the applicant. He had been brought into court on a cross-petition filed by the claimant in the equity suit brought by the plaintiff in fi. fa. in aid of his levy. While the claim case was consolidated with the equity case, none of the equitable rights of the parties thereto were determined by the judgment rendered therein. No rights of Callahan, either legal or equitable, were passed upon in the trial. This trial took place at the first term after he was made a party to the equity proceeding, and was had without his consent. The court was without jurisdiction, as to him, to determine the equity cause without his consent. This left the equity case, to which Callahan had been made a party upon the motion of the claimant, pending in the court below; and as the claimant in that case obtained an order requir-

ing him to assert all the rights and equities which he had in that case, it was entirely proper for him to ask for a receiver therein at the time he did. In these circumstances it would be entirely unnecessary for him to go to the expense and trouble of filing another plenary suit to get the same relief which he was seeking in the pending equity suit.

For these reasons I can not agree to the opinion of the majority in this case. I am authorized to say that Mr. Justice Gilbert concurs in this dissent.