James A. BOWDOIN et al., Appellants,

v.

Buford MALONE, Jr., and United States of America, Appellees.

No. 18222.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1961.

19. Napue v. People of State of Illinois, 1959, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 32 L.Ed. 1217.

Wm. Buford Mitchell, Forsyth, Ga., for appellants.

Raymond N. Zagone, Roger P. Marquis, Attys., Dept. of Justice, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., Dept. of Justice, for appellees.

Before RIVES, CAMERON and BROWN, Circuit Judges.

PER CURIAM.

Appellee Buford Malone, Jr., as Forest Service Officer, Department of Agriculture, has filed, through attorneys of the Department of Justice of the United States, a petition for rehearing, together with a brief in support thereof and a supplement to that brief, together with motion for leave to file the supplement. The motion is granted, and the supplemental brief has been considered by the Court.[1]

We reject without discussion the point raised in the supplement to appellee's brief. It brings to our attention certain correspondence between the attorneys for the parties. This correspondence was not before the lower court and is not contained in the record of this appeal. It deals largely with facts which appellee Malone claims demonstrate that the present action is barred by limitations. The action was decided by the court below upon the face of the complaint filed by appellants and the motion to dismiss filed by appellee below, along with the United States.[2] That is all which was before the court below and which was involved in this appeal and

---

1. The United States, which had entered its appearance and joined in Malone's motion to dismiss, has not joined in the petition for rehearing. The judgment entered pursuant to the opinion heretofore rendered in this case approved the judgment of the court below in dismissing the action insofar as the United States was concerned.

2. The court below dealt with certain admissions which had been made in pretrial hearings. No question was raised as to whether these were properly before the court on the motion to dismiss, so that we raise no question, but have considered the admissions as included in the written opinion of the court below as being properly before the Court upon the motion to dismiss.

we decline to consider the matters discussed in the supplemental brief of appellee Malone, as such a possible defense on the part of appellee was not before the court below and is not before us.

We pass over without discussion as having been sufficiently dealt with in our opinion three points made in the petition for rehearing,[3] and we confine this opinion to a response to the argument presented in Point IV of the petition for rehearing in which it is claimed that "The majority opinion is based upon an erroneous premise as to Georgia law." We do this in part because of the statement in our opinion: "It is manifest from the Georgia statutes quoted and referred to, as well as the decisions cited, that the common law action of ejectment in Georgia involves possession alone, that the only process issuable to the victor is a writ of possession, together with damages, and that 'the writ of possession shall not issue against third persons not known in the suit on which such writ of possession is founded, * * *'". [284 F.2d 98.]

That statement in the opinion meant, of course, that the common law action of ejectment in Georgia, as sought to be invoked and applied by the appellants in this case, involves possession alone. The quoted statement was followed by our statement in the opinion:

"The sole question presented, therefore, is one of law: is appellee

Malone, under the admitted facts, entitled to have the action against him dismissed solely on the ground that he is protected by the asserted sovereign immunity of the United States?"

That is an accurate statement of what was tried before the court below, what was decided by that court, and what was argued before us in the original presentation of this case. No contention was made that the action of ejectment here involved differed from the action of ejectment dealt with in United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, and we made no effort to analyze the statutes and decisions of Georgia to demonstrate that the action of ejectment before the lower court and before us was identical in character and scope with the action involved in Lee.

██ The fact is that Ejectment, as dealt with in Title 33 of the Code of Georgia Annotated, is a comprehensive and flexible remedy. Assuming that, under the Georgia decisions relied upon by appellee in its petition for rehearing [4], the remedy by ejectment has been expanded so as to permit suits to try title to land, there is nothing in any decision we have found which limits the remedy to such a class of actions. Many provisions of the statute reject the thought that the common law action of ejectment, an action at law, has been converted into an exclusively equitable action to quiet title to land, or even to try title.[5]

---

3. That our opinion I "regresses to the discredited view that whether a suit is against the United States is determined by its presence as a formal party defendant;" and that our opinion II is in conflict with the decisions of the Supreme Court, and III of this circuit and other circuits.

4. Vinson v. Cannon, 1957, 213 Ga. 339, 341, 99 S.E.2d 108, 109;
Lopez v. Downing, 1872, 46 Ga. 120;
Brewster v. Wooldridge, 1897, 100 Ga. 305, 306, 308–311, 28 S.E. 43, 44–45;
Bright v. City of Washington, 1957, 95 Ga.App. 84, 86, 97 S.E.2d 163, 164, certiorari denied;
Ramey v. O'Byrne, 1904, 121 Ga. 516, 520, 49 S.E. 595, 597; and

Sweat v. Atlantic Coast Line R. Co., 5 Cir., 1936, 81 F.2d 492, 493.

5. E.G., § 103 of the chapter vests the right to maintain the action in a single joint tenant or other person claiming only a part interest in the lands involved without joining any other person with him, with the proviso that the judgment shall "not affect the rights of those interested in such lands or tenements who are not parties to the suit." § 114 gives the plaintiff the right to make the true claimant defendant and to bind him by the judgment. § 115 confers the right in the plaintiff to make a previous warrantor of title to the land a codefendant. § 120 gives the right to the plaintiff to have a writ of possession against the de-

The opinion rendered by the court below, appearing in the record and now reported in 186 F.Supp. 407, 408, shows that its judgment dismissing the action was predicated upon the petition of appellee Malone alone, stating: "Plaintiff frankly concedes that he cannot maintain this action against the United States itself;" and the decision was rendered in favor of Malone solely on the basis that, in possessing the land, he was acting as agent of the United States, which had not consented to be sued. While the petition for rehearing and the briefs filed in support thereof are somewhat confused, the real contention presented is that the United States was an indispensable party and that the action ought to have been dismissed by the court below on the ground that the suit could not proceed without bringing the United States in.

One of the cases chiefly relied upon to sustain that position is our recent decision in Stewart v. United States, 5 Cir., 1957, 242 F.2d 49. We do not think that appellee's position is sound. Stewart involved an action seeking to quiet title generally against all the world.[6] We held that, in such an action, the United States, through whom the others were claiming title, was an indispensable party, basing our holding largely on our prior cases of Hudson v. Newell, 5 Cir., 1949, 172 F.2d 848, and cases cited, and Mackintosh v. Marks' Estate, 5 Cir., 1955, 225 F.2d 211. We stated the general rule concerning indispensable parties to be:[7]

"It is well settled under the decisions of this Court that no decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the Court."

In Hudson v. Newell we reversed the action of the lower court in dismissing a suit to quiet title generally to certain lands, as provided by Mississippi statutes, using this language:

"If they can prove the land and oil are theirs we see no reason why they should not have judgment for them against those sued; possible claimants not in court would not of course be bound by the result. If such claimants' title is shown as a defense their interests can be saved from the decree. * * *

"We therefore hold that while the full relief prayed cannot be given with only the parties before the court a limited relief can be, and the suits should be retained to enquire into it."[8]

In Mackintosh, we cited Hudson supra, as authority and held:

"Plaintiffs are entitled to any relief which the facts justify even though that relief has not been asked and that theory has not been advanced in the pleadings. * * *

fendant, including a money judgment for mesne profits. And § 121 denies the right of plaintiff to obtain a writ of possession against third persons "not known in the suit." Implicit in the whole chapter and the decisions under it is the rule that the plaintiff may choose whom he shall sue and his judgment will be binding only upon the person or persons properly brought before the court.

In one of the cases relied upon by the appellee, Ramey v. O'Byrne, 121 Ga. 516, 49 S.E. 595, 597, the Supreme Court of Georgia refers to ejectment as a mixed action partly for tort, and partly for trial of title. And see also Nottingham v. Elliott, 1953, 209 Ga. 481, 74 S.E.2d 93.

6. See 242 F.2d at page 50: "The amended complaint prayed that title to the described mineral interests be quieted in plaintiffs, that all clouds and encumbrances be cancelled, that the condemnation proceedings [by which the United States acquired the title which it passed on, as far as the minerals were concerned, to Placid Oil Company and others] be reviewed and corrected, that the oil and gas leases be cancelled and declared void, and that the parties be enjoined from performing them."

7. 242 F.2d 51.

8. 172 F.2d at pages 851 and 853.

286

"The first reason is that the rights of the royalty owners would continue to exist irrespective of the outcome of the present suit. The royalty owners who deraign their title from the appellants are protected under their warranty of title, both express and implied. * * *

" * * * The power of a court of equity so to mold its decree as to do complete justice between the parties without adversely affecting those not before the court is exceedingly broad and elastic. * * *

" * * * the court should retain jurisdiction and limit any relief granted to such as can be given without prejudice to the absent parties." 225 F.2d at pages 214–215.

■ Certainly, under these decisions, the United States was not an indispensable party here. It had been eliminated in effect by consent. It is difficult to discern what relief was sought against the United States by the common law complaint in ejectment in the John Doe proceeding. Taking the averments of that complaint, as supplemented by the statement of the court below that plaintiffs (appellants) conceded that the suit against the United States could not be maintained as true, we think it is clear that, under Lee, a judgment can be entered by the court below which will grant appellants some relief without adversely affecting the interests of the United States. In fact, this was in effect conceded by the appellee in the original brief.[9]

■ Several times in the petition for rehearing, the appellee claims that title was put in issue by the denial of appellants' title by appellees. Of course, there was no responsive pleading at all, and the averments of the complaint must be taken as true in passing upon the motion to dismiss.

The petition for rehearing is Denied.

RIVES, Circuit Judge.
I dissent.

---

9. In which this statement appears on page 10: "While the United States would not be bound by a judgment against Malone, its interests in managing the property would be affected and a doubt would be cast upon its title until directly litigated by the United States with the appellants." Such an incidental impact upon the interests of the United States would not make it an indispensable party, and the same contention was directly rejected in Lee.